1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| SYNTHES (U.S.A.), a Pennsylvania partnership, | ) ) ) | Civil No. 07-CV-309-L(AJB) |
| Plaintiff, | ) ) ) | **ORDER (1) SUSTAINING OBJECTIONS; (2) MODIFYING** |
| v. | ) ) ) | **ORDER REGARDING JURISDICTIONAL DISCOVERY;** |
| G.M. DOS REIS JR. IND. COM. DE EQUIP. MEDICO A/K/A GMREIS, a Brazilian corporation, | ) ) ) ) | **AND (3) SETTING BRIEFING SCHEDULE** |
| Defendants. | ) ) | |

18      This patent infringement case was referred to Magistrate Judge Anthony J. Battaglia for

19 determination of non-dispositive pretrial matters, including discovery, pursuant to Federal Rule

20 of Civil Procedure 72(a) and Civil Local Rule 72.1(b).  Plaintiff Synthes (U.S.A.) ("Synthes")

21 timely filed Objections to the Magistrate Judge's Order re: Jurisdictional Discovery ("Order").

22 Defendant G. M. dos Reis Jr. Ind. Com. de Equip. Mexico a/k/a GMReis ("GMReis") filed a

23 response, and Plaintiff was granted leave to file a reply.  For the reasons which follow,

24 Plaintiff's objections are **SUSTAINED**, and the Order re: Jurisdictional Discovery is

25 **MODIFIED** as explained below.

26      Prompted by GMReis' motion to dismiss for lack of personal jurisdiction pursuant to

27 Federal Rule of Civil Procedure 12(b)(2), which is pending before this court, Synthes sought

28 certain document discovery, a Rule 30(b)(6) deposition of GMReis' person most knowledgeable

1   on certain topics, as well as depositions of Gerald Marins dos Reis Jr. and Jose Luiz Linda

2   Lecumberri, who submitted declarations in support of the motion.  After GMReis failed to

3   produce the requested discovery, Synthes filed a motion to compel.  GMReis responded with

4   motions for a protective order and to stay discovery during the pendency of the motion to

5   dismiss.

6          The Magistrate Judge granted in part and denied in part Synthes' motion to compel,

7   granted in part and denied in part GMReis' motion for a protective order and denied GMReis'

8   motion to stay discovery.  While Synthes was granted the right to obtain jurisdictional discovery,

9   its document discovery was limited to documents and activities occurring on or after the date

10  when the patent-in-suit issued.  In addition, jurisdictional discovery was to be conducted

11  according to the laws of Brazil, because GMReis is a Brazilian corporation and the requested

12  documents and witnesses are located in Brazil.  Synthes objects to the Order insofar it requires

13  jurisdictional discovery to comply with Brazilian law and limits discovery to the period after the

14  patent-in-suit issued.

15         District court review of magistrate judge orders on non-dispositive motions is limited.

16  Discovery motions, such as the motions at issue here, are considered non-dispositive.  See 28

17  U.S.C. § 636(b)(1)(A); Civ. Loc. R. 72.1(b).  A district court judge may reconsider a magistrate

18  judge's ruling on a non-dispositive motion only "where it has been shown that the magistrate's

19  order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. Proc.

20  72(a).  This essentially amounts to an abuse of discretion standard.  *See  Foster v. Skinner*, 70

21  F.3d 1084, 1087 (9th Cir. 1995) ("An abuse of discretion occurs if the district court does not

22  apply the correct law or rests its decision on a clearly erroneous finding of fact.").

23         The Order limits permissible discovery to the time period after the issuance of the patent-

24  in-suit.  (Order at 10.)  Because specific jurisdiction is "based on the relationship between the

25  defendant's forum contacts and the plaintiff's claim," *Yahoo! Inc. v. La Ligue Contre le Racisme*

26  *et l'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006), the Order correctly concludes that facts

27  predating the patent are irrelevant for purposes of specific personal jurisdiction.  (Order at 9-10

28  ("Request Nos. 1-18 are overly broad and should be limited to the time period after issuance of

07cv309

the patent-in-suit . . ., *as GMReis activities prior to this date would not constitute infringement*.") (emphasis added).)   However, the Order does not consider the issue whether the same discovery may be relevant for purposes of general personal jurisdiction.  (*See* Mem. of P.&A. in Supp. of Pl. Synthes' Mot. to Compel Jurisdictional Disc., filed May 17, 2007 ("Mot. Below"), at 16.) Because the magistrate court "did not exercise its discretion in this regard, the issue of whether or not it should have presents a legal question which is subject to de novo review." *First Pac. Bank v. Gilleran*, 40 F.3d 1023, 1027 (9th Cir. 1994).

General jurisdiction exists "over a defendant who has had continuous and systematic contacts with the forum state," *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 n.1 (9th Cir. 2003), "even if the action is unrelated to those contacts," *Bancroft & Masters, Inc. v. Augusta Nat'l. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  *See also Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.* 395 F.3d 1275, 1279 (Fed. Cir. 2005) (defining specific and personal jurisdiction).  It is undisputed that GMReis had contacts with the United States[1] prior to the issuance of the patent-in-suit.  (*See* Order at 8.)  These contacts are relevant to the issue of general jurisdiction.  Accordingly, to the extent Synthes challenges the temporal limitation of jurisdictional discovery to the time after the issuance of the patent-in-suit, its objection is sustained, and the Order is modified in this regard.  Consistent with the Order, jurisdictional discovery, whether before or after the issuance of the patent-in-suit, is limited to the issues relevant to personal jurisdiction, that is the timing, quality, quantity and nature of GMReis' contacts with the United States.

The Order also requires Synthes to comply with the laws of Brazil to obtain jurisdictional discovery from GMReis.  (Order at 12.)  However, it does not cite legal authority in support of this conclusion.  The conclusion is based on the "principles of comity and the relevant treaty provisions."  (*Id.*)  The principles of comity and treaty provisions are not discussed.

---

[1]     GMReis has not objected to discovery of its contacts with the United States, as opposed to its contacts with the State of California.  As a product of Rule 4(k)(2), the courts may "look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006).

07cv309

It is undisputed that Brazil does not allow depositions of its nationals on its soil by American attorneys for use in courts in the United States, even if the deposition were to take place before a United States consular officer, with the assistance of a Brazilian attorney, or in any other manner.  (*See* Lapple Decl., filed May 24, 2005 ("Lapple Decl."), Exh. D & E.)[2] "Brazil is not a party to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters.  The United States is not a party to the evidence provisions of the Inter-American Convention on Letters Rogatory."  (*Id*. Exh. D.)  "Judicial assistance between the United States and Brazil in civil . . . matters is governed by Article 5 . . . of the Vienna Convention of Consular Relations," which provides in relevant part for "transmitting judicial and extra-judicial documents or executing letters rogatory or commissions to take evidence for the courts of the sending State in accordance with international agreements in force or, *in the absence of such international agreements, in any manner compatible with the laws and regulations of the receiving State*."  (*Id*. Exh. E ¶ 4 (emphasis added).)  No agreements are in effect between the United States and Brazil for taking evidence abroad.  Therefore, any request made pursuant to the Vienna Convention to obtain deposition testimony in Brazil must comply with the laws of Brazil.  To do so, an American attorney must make a request for judicial assistance to the Ministry of Justice in Brazil.  (*Id*. Exh. D.)  Typically, such requests are made by letters rogatory submitted to the United States Department of State, Bureau of Consular Affairs for transmission through the diplomatic channels.  (*See id*.)  If and when the request is granted, the deposition is taken by Brazilian judicial authorities.  (*Id.*)  Neither party contends that Brazil precludes depositions of its nationals abroad according to the laws of the country where the deposition is held.

/ / / / /

---

[2]     The court takes judicial notice of the United States Department of State's posting on its website at http://travel.state.gov/law/info/judicial/judicial_672.html regarding obtaining evidence in Brazil (*see* Lapple Decl. Exh. D) and Declaration of Edward A. Betancourt, Director of the Office of Policy Review and Inter-Agency Liaison in the Directorate of Overseas Citizens Services of the Bureau of Consular Affairs in the United States Department of State, referenced in the Department of State website, filed on May 24, 2001 in the United States District Court for the District of New Jersey, *Wheaton v. Porreca*, 00cv2205 (Lapple Decl. Exh. E).

07cv309

1    In United States District Courts, the determination whether discovery should proceed

2  under the Federal Rules or some other law is made based on a balancing test endorsed in *Societe*

3  *Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522 (1987).  *See*

4  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474-75 (9th Cir. 1992).  The

5  Order does not indicate whether this balancing test was considered.  Accordingly, the

6  appropriateness of requiring compliance with Brazilian law for purposes of jurisdictional

7  discovery is reviewed de novo.  *See First Pac. Bank*, 40 F.3d at 1027.

8    In its opposition to Synthes' objections, GMReis disputes the relevance of *Aerospatiale*

9  because the choice in *Aerospatiale* was between the evidence-gathering provisions of the Hague

10  Convention and the Federal Rules, whereas the Hague Convention is inapplicable in this case.

11  No legal authority is cited in support of this argument.  The distinction argued by GMReis was

12  deemed irrelevant in *Richmark Corporation v. Timber Falling Consultants*, where the Ninth

13  Circuit followed the *Aerospatiale* balancing test in a case which did not involve the Hague

14  Convention.  *See* 959 F.2d 1468.  Furthermore, the Advisory Committee Notes to the 1993

15  Amendments to Federal Rule of Civil Procedure 28 refer attorneys to *Aerospatiale* "[f]or a

16  discussion of the impact of . . . treaties upon the discovery process, and of the application of

17  principles of comity upon discovery in countries *not signatories to a convention*."  (Emphasis

18  added.)  GMReis' argument is therefore unavailing.

19    GMReis further disputes *Aerospatiale*'s applicability because personal jurisdiction was

20  not disputed therein, whereas it is disputed in this case.  *Aerospatiale* expressly acknowledged

21  that personal jurisdiction over the foreign defendant was undisputed.  482 U.S. at 524, 525

22  (personal jurisdiction not questioned by defendant).  It did not address the issue whether the

23  balancing test it endorsed would apply in a case where personal jurisdiction is disputed and

24  discovery is sought to establish personal jurisdiction over the foreign defendant.  Neither party

25  cites a Ninth Circuit decision on point, and the court is aware of none.  The court therefore looks

26  to other circuits.  Synthes relies on the Third Circuit opinion *In re Automotive Refinishing Paint*

27  *Antitrust Litigation*, 358 F.3d 288 (3d Cir. 2004) ("*Automotive*").  Although *Automotive*

28  references a "split of authorities among federal district courts and state courts regarding the

07cv309

1   extension of *Aerospatiale* to jurisdictional discovery," it does not reference any split in the

2   circuits.  *See Automotive*, 358 F.3d at 301.  Neither party cites to any alternative federal circuit

3   court decision, and this court is not aware of any.  *Automotive* held that "there should be no

4   exception to the *Aerspatiale* holding for jurisdictional discovery" and that "the *Aerospatiale*

5   balancing test applies equally to jurisdictional discovery."  *Id*. at 302, 305.

6        The primary basis for the holding of *Automotive* is the court's authority to determine

7   whether it has personal jurisdiction over defendants:[3]

8        a trial court has authority to determine its jurisdiction.  *See Ins. Corp. of Ireland,
         Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S.Ct. 2099, 72
9        L.Ed.2d 492 (1982) ("By submitting to the jurisdiction of the Court for the limited
         purpose of challenging jurisdiction, the defendant agrees to abide by that court's
10       determination on the issue of jurisdiction").  Because the District Court has
         jurisdiction over these foreign defendants to the extent necessary to determine
11       whether they are subject to personal jurisdiction, we see no legal barrier to
         exercising the discretion given to trial courts by *Aerospatiale* in cases of
12       jurisdictional discovery.

13   *Automotive*, 358 F.3d at 302.  The court also noted that it would not be unfair to foreign

14   defendants to undertake the *Aerospatiale* balancing test before determining which rules to apply

15   for jurisdictional discovery because they voluntarily appeared in the court to challenge

16   jurisdiction and had availed themselves of the Federal Rules for that purpose.  *Id*. at 303.  The

17   distinction between jurisdictional, as opposed to "merits," discovery was held without a

18   difference because "[n]o one would dispute that if jurisdiction discovery yields no evidence

19   sufficient to establish personal jurisdiction, the court must dismiss the underlying action against

20   the appellants, rather than deciding which set of procedural rules to apply."  *Id*. at 303 & n.18.

21   "The undisputed presence of personal jurisdiction in *Aerospatiale* is, therefore, tangential to its

22   holding and irrelevant to the issue of whether *Aerospatiale* applies also to jurisdictional

23   /////

24   /////

25   /////

26

---

27       [3]   Synthes advanced this argument in support of its motion to compel.  (*See* Mot.
     Below at 17; Reply in Supp. of Pl. Synthes' Mot. to Compel Jurisdictional Disc. and Opp'n to
28   GMReis' Cross Mot. for a Protective Order, filed May 29, 2007 (Reply Below")), at 11-12.)

07cv309

1  discovery." *Id.* at 303.  The court finds the reasoning of *Automotive* persuasive, and therefore

2  applies the *Aerospatiale* balancing test to jurisdictional discovery in this case.[4]

3          *Aerospatiale* holds that the concept of international comity requires a "particularized

4  analysis of the respective interests of the foreign nation and the requesting nation."  482 U.S. at

5  543-44.  The factors relevant to the comity analysis are:

6          (1) the importance to the . . . litigation of the documents or other information
           requested;
7          (2) the degree of specificity of the request;
           (3) whether the information originated in the United States;
8          (4) the availability of alternative means of securing the information; and
           (5) the extent to which noncompliance with the request would undermine
9          important interests of the United States, or compliance with the request would
           undermine important interests of the state where the information is located.

10

11  *Id.* n.28 *quoting* Restatement of Foreign Relations Law of the United States (Revised)

12  § 437(1)(c) (Tent. Draft No. 7, 1986) (approved May 14, 1986).  This list of factors is not

13  exhaustive, and the following additional factors are considered relevant in the Ninth Circuit:

14          the extent and the nature of the hardship that inconsistent enforcement would
           impose upon the person, and the extent to which enforcement by action of either
15          state can reasonably be expected to achieve compliance with the rule prescribed by
           that state.

16

17  *Richmark*, 959 F.2d at 1475 (internal quotation marks, ellipsis, brackets and citation omitted).

18          *Importance of the Discovery Requested*:  "Where the outcome of litigation does not stand

19  or fall on the present discovery order, or where the evidence sought is cumulative of existing

20  evidence, courts have generally been unwilling to override foreign . . . laws.  Where the evidence

21  is directly relevant, however, we have found this factor to weigh in favor of disclosure."

22  *Richmark*, 959 F.2d at 1475 (internal quotation marks and citations omitted).  In this case, the

23  requested discovery is directly relevant to the outcome of the dispositive motion pending before

24

25          [4]      GMReis also argues the court should not apply *Aerospatiale* because Synthes did
   not cite it in its briefing before the Magistrate Judge.  The argument is rejected.  GMReis itself
26  cited *Aerospatiale*.  (Def. GMReis' Opp'n to Pl. Synthes' Mot. to Compel Jurisdictional Disc.
   and Cross Mot. for a Protective Order, filed May 24, 2007 ("Opp'n Below"), at 11, 13.)   In
27  response, Synthes relied on the *Aerospatiale* holding that "evidence gathering procedures under
   international treaties are 'permissive supplements' to the procedures under the Federal Rules
28   . . .."  (Reply Below at 2; *see also id.* at 11 n.6.)

1    the court.  If the court determines it has personal jurisdiction, the case will continue, and if it

2    determines personal jurisdiction is lacking, the case will be dismissed.  The importance of the

3    discovery to this case therefore weighs in favor of proceeding under the Federal Rules.

4         *Specificity of the Request*:  "A second consideration in evaluating a discovery request is

5    how burdensome it will be to respond to that request."  *Richmark*, 959 F.2d at 1475.  In this case,

6    discovery is limited to the facts pertinent to personal jurisdiction, the threshold issue which

7    determines whether this case will continue.  Generally, jurisdictional discovery is less intrusive

8    than merits-based discovery.  *See Automotive*, 358 F.3d at 303.  To the extent GMReis

9    contended the discovery requests were onerous because they extended beyond personal

10   jurisdiction, the Magistrate Judge and this court have addressed the issue elsewhere.  (*See* Order

11   at 9 and *supra*.)  In its opposition to Synthes' objections to the Order, GMReis does not maintain

12   the objections should be overruled because discovery under the Federal Rules is unduly

13   onerous.[5]  Accordingly, this factor does not favor application of Brazilian law.

14        *Location of Information and Parties*:  "The fact that all the information to be disclosed

15   (and the people who will be deposed or who will produce the documents) are located in a foreign

16   country weighs against disclosure, since those people and documents are subject to the law of

17   that country in the ordinary course of business."  *Richmark*, 959 F.2d at 1475.  In this case, the

18   documents and individuals are located in Brazil.  Although it does not appear to be disputed that

19   some GMReis representatives periodically travel to the United States on business, this factor

20   weighs in favor of applying Brazilian law.

21

22

23   ───────────────

         [5]     In its briefing before the Magistrate Judge, GMReis argued that depositions in the
     United States of the two GMReis representatives who provided declarations in support of motion
     to dismiss would be burdensome.  It did not argue the same with respect to the document
24   requests.  (*See* Opp'n Below at 11.)  GMReis argued that the depositions would be onerous due
     to short-notice travel and lodging arrangements and disruptions of work schedules.  (*Id.*)  The
25   Order requiring compliance with the laws of Brazil, however, was not based on the alleged
     onerousness, but on the "principles of comity and the relevant treaty provisions."  (Order at 12.)
26   Even if GMReis renewed its onerousness arguments in opposition to Synthes' objections, they
     would be insufficient to tip the scales.  It is undisputed that the same GMReis representatives
27   travel to the United States on business.  (*See, e.g.,* Opp'n Below at 2-3.)  Furthermore, "modern
     advances in communications and transportation have significantly reduced the burden of
28   litigating in another country."  *Harris Rutsky & Co. Ins. Serv.*, 328 F.3d at 1132-33.

07cv309

*Alternate Means of Obtaining Information*:  "If the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law.  . . . In this circuit, the alternative means must be 'substantially equivalent' to the requested discovery." *Richmark*, 959 F.2d at 1475.  In this case the need for discovery was spurred in large part by the declarations of GMReis' representatives filed in support of motion to dismiss.  It therefore appears that the information cannot be obtained elsewhere.  GMReis does not suggest to the contrary.  This factor therefore weighs against the application of Brazilian law.

*Balance of National Interests*:  "This is the most important factor.  We must assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would affect important substantive policies or interests of either the United States or [Brazil]." *Richmark*, 959 F.2d at 1476 (internal quotation marks and citation omitted).  Unlike in *Richmark* and *Aerospatiale*, where foreign governments expressed their interest in precluding discovery under Federal Rules by filing either amicus briefs (*Aerospatiale*, 482 U.S. at 523) or issuing letters to the foreign defendant (*Richmark*, 595 F.2d at 1476), Brazil has made no such expressions of governmental interest in this case.  GMReis' position is based on the undisputed assertion that "Brazil does not allow voluntary depositions of its citizens in Brazil by American attorneys for use in American court cases.  Only Brazilian judicial authorities may take Brazil-based depositions intended for use in a foreign court."  (Order at 11; *see also* Mot. Below at 17-18 & Opp'n Below at 10.)  In Brazil, the process of obtaining evidence is normally conducted by a judicial officer rather than by private attorneys.  (*See* Lapple Decl., Exh. E ¶ 6 ("Ministry [of External Relations of Brazil] officials explained [the U.S. Embassy officials] that the taking of depositions for use in foreign courts constitutes an act of procedural law and that, as such, must be undertaken in Brazil only by Brazilian judicial authorities.  The Ministry also cited as an implicit principle of Brazilian Constitutional Law that only Brazilian judicial authorities are competent to perform acts of a judicial nature in Brazil.  In view of this position, Brazil has advised it would deem taking depositions in Brazil by foreign persons to be a violation of Brazil's judicial sovereignty.").)  The argument that evidence-gathering in a foreign country by an unauthorized person might violate the "judicial sovereignty" of the host nation has been

07cv309

1 found unpersuasive to mandate the application of discovery procedures other than the Federal

2 Rules. *Aerospatiale*, 482 U.S. at 543.  Even "blocking statutes," such as a foreign criminal law

3 providing that a corporation could not respond to discovery requests from another country which

4 did not comply with the Hague Convention, *see Aerospatiale*, 482 U.S. at 526 & n.6, or a

5 secrecy law prohibiting disclosure of certain information, *see Richmark*, 959 F.2d at 1474, do

6 not deprive an American court of the power to order a party to produce evidence under the

7 Federal Rules, although the production of the evidence may violate that statute and subject the

8 defendant to penalties, *Aerospatiale*, 482 U.S. at 543 n.29; *Richmark*, 959 F.2d at 1474.  Such

9 statutes are "relevant to the court's particularized comity analysis only to the extent that [their]

10 terms and [their] enforcement identify the nature of the sovereign interests in nondisclosure of

11 specific kinds of material." *Aerospatiale*, 482 U.S. at 543 n.29.  GMReis does not maintain that

12 Brazil adheres to a "blocking statute" and does not identify any interests Brazil may have in the

13 nondisclosure of GMReis' contacts with the United States.  On the other hand, the Untied States

14 has an interest in "vindicating the rights of American plaintiffs," *Richmark*, 959 F.2d at 1477,

15 and in protecting the patents issued by its Patent Office.  The balancing of national interests

16 therefore weighs in favor of applying the Federal Rules.

17    *Hardship to GMReis*:  "The effect that a discovery order is likely to have on the foreign

18 company is another factor to be considered." *Richmark*, 595 F.2d at 1477.  This factor is

19 concerned primarily with any sanctions or criminal penalties a foreign defendant may suffer in

20 its own country for complying with a discovery request in a United States court. *See id.* at 1477,

21 1475 ("inconsistent enforcement").  GMReis does not argue that discovery under the Federal

22 Rules would subject it to the hardship of this type.  Accordingly, this factor also weighs in favor

23 of applying the Federal Rules.

24    *Likelihood of Compliance*:  "If a discovery order is likely to be unenforceable, and

25 therefore to have no practical effect, that factor counsels against requiring compliance . . .."

26 *Richmark*, 959 F.2d at 1478.  At this stage in the proceedings, it is premature to conclude that

27 GMReis could not be compelled to comply with discovery under the Federal Rules.  Even if it

28 were impossible to force GMReis to comply, this would not necessarily preclude ordering

10

07cv309

discovery under the Federal Rules.  *See id*.  "[A] clear statement that foreign corporations which avail themselves of business opportunities in the United States must abide by United States laws might have a substantial effect on the way [such] corporations do business in the United States in the future."  *Id*.  GMReis avails itself of marketing opportunities in the United States.  (*See* Opp'n Below at 2-3.)  Accordingly, this factor does not weigh against compelling discovery under the Federal Rules.

*Conclusion*:  Weighing the foregoing factors, the court finds they favor jurisdictional discovery under the Federal Rules rather than under the laws of Brazil.  Because Brazilian law subjects foreign attorneys who conduct depositions of Brazilian nationals in Brazil to potential arrest, detention, expulsion or deportation (*see* Lapple Decl. Exh. D), any depositions of Brazilian nationals in this case are to be conducted in the United States.

For the foregoing reasons, Synthes' Objections to the Magistrate Judge's Order re: Jurisdictional Discovery are **SUSTAINED**, and the Order is **MODIFIED** as follows:

1.  Jurisdictional discovery shall not be limited to the time period after the patent-in-suit issued.  Consistent with the Magistrate Judge's Order, jurisdictional discovery shall be circumscribed to the facts relevant to personal jurisdiction.

2.  Jurisdictional discovery shall proceed under the Federal Rules of Civil Procedure. Any depositions of Brazilian nationals in this case are to be conducted in the United States.

**IT IS FURTHER ORDERED** that Plaintiff's opposition to Defendant's motion to dismiss shall be filed and served no later than February 18, 2008.  Defendant's reply in support of its motion to dismiss shall be filed no later than February 25, 2008.  Upon the filing of the foregoing, the parties shall await further order of the court.  In light of four prior joint motions to continue the briefing schedules and hearing dates on Defendant's motion to dismiss, the court will not entertain any further requests for continuances related to this motion.

**IT IS SO ORDERED.**

DATED:  January 8, 2008

_____
M. James Lorenz
United States District Court Judge

07cv309

1  COPY TO:

2  HON. ANTHONY J. BATTAGLIA
   UNITED STATES MAGISTRATE JUDGE
3
   ALL PARTIES/COUNSEL
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv309